**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **IN RE APPLICATION OF THE REPORTERS** | **:** | |
| **COMMITTEE FOR FREEDOM OF THE** | **:** | **24-MC-115 (JEB)** |
| **PRESS AND THE WASHINGTON POST** | **:** | |

**GOVERNMENT'S OPPOSITION TO APPLICATION OF THE REPORTERS
COMMITTEE FOR FREEDOM OF THE PRESS AND THE WASHINGTON POST FOR
AN ORDER FURTHER UNSEALING THE ORDERS, BRIEFS, TRANSCRIPTS,
DOCKET, RECORD, AND PARTY NAMES IN
_IN RE GRAND JURY SUBPOENA NO. 7409_**

The United States respectfully opposes the Application for an Order Unsealing the Orders, Briefs, Transcripts, Docket, Record, and Party Names in _In Re Grand Jury Subpoena No. 7409_ (the "Application"), filed by the Reporters Committee for Freedom of the Press and the Washington Post (together, the "Applicants"). The Applicants seek wholesale unsealing of "all previously redacted information" in filings, transcripts, and other Court records associated with an ancillary grand jury proceeding. App. at 6. For the reasons discussed below, the information the Applicants seek to unseal remains protected by Rule 6(e)(6) and should remain redacted. The Court should deny the Application.

## I.    BACKGROUND

On July 11, 2018, the grand jury, in connection with an investigation by the Special Counsel's Office into foreign interference in the 2016 election, issued a subpoena seeking information from a corporation (the "Contemnor") owned by Country A. _In re Grand Jury Subpoena_, 912 F.3d 623, 626 (D.C. Cir. 2019).  After a period of negotiation with government

attorneys, the Contemnor moved to quash the subpoena. *See* ECF 3.[1] Thus began nearly a year of active litigation, at all three levels of the federal judiciary, over Contemnor's compliance with the subpoena. *See generally*, Docket, *In re Grand Jury Subpoena No. 7409*, No. 1:18-gj-0041-BAH (D.D.C.).

Over the course of that litigation and following its conclusion, both *sua sponte* and in response to a prior motion by the Reporters Committee seeking access to Court records associated with this matter, the Court has released nearly every pleading, order, and hearing transcript in this matter. Those documents, however, contain redactions to protect information that was and should remain protected as grand jury material under Rule 6(e).  The Applicants now seek unsealing of that protected material.

## II.    ARGUMENT

In contrast to other judicial proceedings where "publicity is the rule," matters occurring before the grand jury are presumptively secret. *See Levine v United States*, 362 U.S. 610, 617 (1960). This presumption of secrecy extends to ancillary matters before the court—including motions to quash and contempt proceedings—that relate to grand jury matters. *See* Fed. R. Crim. P. Rule 6(e)(6) ("Records, orders, and subpoenas relating to grand-jury proceedings must be kept under seal to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury."); LCrR 6.1 ("A motion or application filed in connection with a grand jury subpoena or other matter occurring before a grand jury, all other papers filed in support

---

[1] Unless otherwise indicated, citations to ECF documents reference filings and orders on the docket for the proceeding in *In re Grand Jury Subpoena No. 7409*, No. 1:18-gj-0041-BAH (D.D.C.).

of or in opposition to such a motion or application, and all orders entered by the Court in connection therewith, shall be filed under seal.").

Although secrecy is the default, the Court may make public "[p]apers, orders and transcripts of hearings…or portions thereof…upon a finding that continued secrecy is not necessary to prevent disclosure of matters occurring before the grand jury." LCrR 6.1. Specifically, "[c]ourts may unseal records containing matters occurring before a grand jury only if the matters have already been publicly disclosed…one of the Rule 6(e)(3) exceptions applies…or the records can be redacted to excise any secret information." *In re Cheney*, No. 23-5071, 2024 WL 1739096, at *3 (D.C. Cir. Apr. 23, 2024) (internal citations omitted).

Applicants do not suggest—nor can they—that an exception under Rule 6(e)(3) applies. Instead, they argue that the remaining two exceptions articulated in *In re Cheney* are applicable here. App. at 17. As discussed below, they do not, and the Application should be denied.

### a. The Information Redacted in the Previously-Published Versions of Court Records in this Matter is, and Should Remain, Secret.

First, Applicants assert that the previously-redacted information should be released because the records "can be redacted to excise any secret information." App. at 17 (quotation omitted). As the Applicants acknowledge, this has already occurred. Both *sua sponte* and in response to the Reporters Committee's February 2019 Motion to Unseal (ECF 94), the Court, in collaboration with the government and the Contemnor, has prepared and published nearly 1,200 pages of redacted briefs, orders, transcripts, and other court records associated with this proceeding. The Court has proactively reviewed existing redactions and released more information to the public, including most recently in June 2024.

Applicants suggest, however, that with the closure of the investigation, "…the justifications for secrecy hav[e] subsided substantially over time…and should give way." App. at 19. But the protections of Rule 6(e)(6) do not disappear at the close of an investigation. Although Rule 6(e) seeks in part to protect the integrity of investigations currently before the grand jury, it also provides critical protections for witnesses and targets long after an investigation closes. *See e.g., McKeever v. Barr*, 920 F.3d 842, 849 (D.C. Cir. 2019) (In declining to release grand jury materials related to an investigation from 1957, the Court explained that "there is likely to be a chilling effect on what a witness is willing to say to a grand jury if there is a risk the court will later make the witness's testimony public…The effect of an exception [to the continued protections of Rule 6(e)] must be evaluated *ex ante*, not *ex post*.").

Here, the information Applicants seek to unseal—including the identity of the Contemnor, the country where the Contemnor was located, and details of the Special Counsel's investigation—should remain secret. The government can confirm that the investigation is closed. But regardless of the status of the investigation, important policy justifications for grand jury secrecy still apply, including the ongoing privacy concerns of the Contemnor (who has informed the government through counsel that it wishes its identity to remain secret) and the more general desire to encourage candor in witnesses and entities subpoenaed to provide information to the grand jury. *See id.*

Contrary to Applicants' assertions, the public's and the media's interest in the details of the investigation ought not factor into the court's analysis of whether to unseal the redacted material. Indeed, as described in detail in *In re New York Times Co.*, the Advisory Committee on Criminal Rules expressly declined to add an exception to Rule 6(e) "to allow the release of materials of special historical or public interest" on the grounds that "the possibility that a witness's

testimony could be released—even after several decades—would impede witness cooperation ....
[and] could adversely affect the reputational and business interests of witnesses and their families."
657 F. Supp. 3d 136, 153 (D.D.C. 2023), *vacated sub nom. In re Cheney*, No. 23-5071, 2024 WL
1739096 (D.C. Cir. Apr. 23, 2024) (internal citation omitted).[2] The redacted versions of records in
this proceeding previously published by the Court appropriately redact secret grand jury
information; the closure of the investigation and the public's interest in its details should not
change the court's analysis. The information should remain secret, and the Application should be
denied.

### b. The Information Applicants Seek to Unseal Has Not Been Publicly Disclosed by the Contemnor, Contemnor's Counsel, or the Government.

Separately, Applicants argue that the redacted information should be unsealed because
"numerous facts have become known since the Court's April 1, 2019, order that significantly alter
the calculus with respect to redaction of the material at issue here." App. at 21. This court has
found, in certain very limited circumstance, that grand jury information has lost its protection as a
result of public disclosure of the information. Critical to the court's analysis of whether to release
information that would otherwise be protected by Rule 6(e) is the source of the relevant disclosure.
This court has found that grand jury information loses its protections where it was disclosed by (1)
the government, *In re North*, 16 F.3d 1234, 1245 (D.C. Cir. 1994); (2) a grand jury witness, *In re
Grand Jury Subpoena, Judith Miller*, 493 F.3d 152, 154–155 (D.C. Cir. 2007); or (3) a witness's

---

[2] *In re New York Times*, in which the court declined to release court records of a privilege dispute arising out of the
Special Counsel's investigation of then-President Trump's efforts to overturn the 2020 election, was vacated by the
D.C. Circuit Court because, after the District Court's decision and before the Circuit Court's decision, an attorney for
the Special Counsel's office (with the court's permission) confirmed the existence of the privilege dispute in a public
hearing. See *In re Cheney*, 2024 WL 1739096 at *2. The D.C. Circuit found that the District Court's decision was
correct at the time it was made but remanded for reconsideration following the government's disclosure. *Id* at *4.
After some additional briefing and the *ex parte* submission by the government of proposed redactions to the subject
material, the Court accepted the government's proposed redactions, and the government publicly filed those redacted
versions. *See* 1:22-mc-100, Minute Order (October 24, 2024) and ECF 32.

attorney, *In re Dow Jones & Co.*, 142 F.3d 496, 505 (D.C. Cir. 1998). However, where information is disclosed to the press by unnamed or anonymous sources, it does not lose its Rule 6(e) protections. *See In re Dow Jones*, 142 F.3d at 505 (grand jury witness's identity did not lose Rule 6(e) protection "because of press reports relying on unnamed sources").

Even where some information has been publicly disclosed by prosecutors or grand jury witnesses, the court has taken a narrow view on what, if any, information it should unseal as a result of a disclosure. The court must unseal only those matters that have been disclosed by prosecutors, witnesses, or their attorneys, while leaving "[a]ll other 6(e) material . . . tucked safely behind the grand jury's closed doors." *In re Press Application for Access to Jud. Recs. Ancillary to Certain Grand Jury Proc. Concerning Former Vice President Pence*, 678 F. Supp. 3d 135, 143 (D.D.C. 2023).

Applicants make much of the "painstaking reporting" done by the Washington Post, specifically an August 2024 article that relied on "dozens of interviews and a detailed review of thousands of pages of government documents" and argue that, as a result of the Post's reporting, the information they seek is now "widely known." App. at 20-21; Aaron C. Davis & Carol D. Leonnig, *$10M cash withdrawal drove secret probe into whether Trump took money from Egypt*, Wash. Post (Aug. 2, 2024), https://www.washingtonpost.com/investigations/2024/08/02/trump-campaign-egypt-investigation/ (the "Article" or "Davis & Leonnig").[3] Importantly, as the Article acknowledges, the government has not confirmed or disclosed any of the facts reported by the

---

[3] The Application cites two additional articles published by the Washington Post and the New York Times in August and September 2024 (after the Court last released redacted material in June 2024). App. at 12-16; Carol D. Leonnig & Aaron C. Davis, *House Democrats Ask Trump If He Illegally Accepted $10 Million From Egypt,* Wash. Post (Sept. 3, 2024), https://www.washingtonpost.com/investigations/2024/09/03/trump-egypt-investigation-menendez/; Michael S. Schmidt, Adam Goldman & Glenn Thrush, *Alongside the Trump-Russia Inquiry, a Lesser-Known Look at Egyptian Influence*, N.Y. Times (Aug. 2, 2024), https://www.nytimes.com/2024/08/02/us/politics/trump-mueller-egypt.html. Although Applicants reference these articles, their substantive arguments rely only on the August 2024 Davis & Leonnig article. App. at 20-22. The government thus does not discuss the additional articles in detail here.

Post; to the contrary, the Justice Department, the United States Attorney's Office, the Federal Bureau of Investigation, and the Central Intelligence Agency all declined to comment when contacted by the Post. *See id*. Nor has the Contemnor publicized its involvement. Far from "proclaim[ing]" its identity "from the rooftops," the Contemnor has informed the government, in response to inquiries made as a result of the Application, that it wants its involvement to remain secret. *In re Motions of Dow Jones & Co*., 142 F.3d at 505.

The Article relies heavily on unnamed sources—"people familiar with the investigation," "people with knowledge of the events," "people briefed on the case," etc. *See* Davis & Leonnig. The Article also cites to sealed court documents which the reporters claim to have reviewed—but it does not reveal how those documents were obtained or who provided them to the Post. *See id.*

The only named sources of disclosure cited in the Article and by the Applicants are Trump campaign spokesperson Steven Cheung, spokesperson for the Egyptian government Ayman Walsh, and former United States Attorney for the District of Columbia Michael Sherwin. None of these named sources are current representatives of the government or Contemnor. And even if they were, the only information attributed by name to any of these sources is the fact that there was an investigation and that it was closed. *See id.* The fact of an investigation is apparent from the redacted filings that have already been released. The government does not believe any of the redacted portions of the documents reference the closure of the investigation. To the extent that they do, the government agrees to remove those redactions.

Because neither the government nor the Contemnor have publicly confirmed the Contemnor's identity, the country where the Contemnor was located, or the details of the underlying investigation, the Article should not change the Court's analysis of what materials

should retain the protections of Rule 6(e).[4] The redactions in the materials currently available to the public appropriately excise only grand jury information that has not yet been disclosed by official sources. The Application for further unsealing should be denied.

## III.    CONCLUSION

For the reasons discussed herein, the United States respectfully requests that the Court deny the Applicants' request to unseal redacted information in the filings, transcripts, and other Court records in this matter.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

*/s/ Gregg A. Maisel*
Gregg A. Maisel
D.C. Bar No. 447902
Assistant United States Attorney
Chief, National Security Section
Deputy Chief, Criminal Division
(202) 252-7812
Gregg.Maisel@usdoj.gov
Megan E. McFadden
Mass. Bar Number 687959
Assistant United States Attorney
202-252-7052
megan.mcfadden@usdoj.gov
601 D Street, N.W.
Washington, DC 20530

Dated: November 15, 2024

---

[4] The government is separately filing an *ex parte*, under seal Supplemental Filing, in which it examines the specific categories of grand jury information that remain redacted in the public filings and the public statements, cited in the Application, related to each category.

## **CERTIFICATE OF SERVICE**

I certify that on the 15th day of November, 2024, service was made of the foregoing

opposition via the automatic notice of filing sent by the CM/ECF software to all counsel of

record in this matter, pursuant to LCvR 5.4(d)(2).

/s/ Megan E. McFadden
Megan E. McFadden
Assistant United States Attorney's Office
